May it please the Court, Peter Hosharian, peering on behalf of the petitioner in this matter. Your Honor, since Wren is fresh on our minds, I'll start with the judge's concerns about corruption. This is a pre-real idea. Correct. So Wren doesn't govern. Well, it, I mean, I Wren is an interpretation of the real idea. Correct. I mean, I don't know why you have more favorable, a more favorable legal framework than the primary. Right. I would imagine, I would, there was no, the first time the petitioner was confronted with whether or not he should bring his wife or his family members as witnesses was at the final hearing before the immigration judge. And he even said if you'd like me to bring He said I will bring my family members if the judge deems it necessary. That's in the record. Where? I don't remember seeing it, so if you want to look at that. I can get that for you. I apologize. I don't have the direct page and number, Your Honor. At this point, I can bring it for you on a little time. We can come back up. Right. Thank you, Your Honor. And he wasn't given that opportunity at that time. He, if you'd recall, the direct examination was taken in 2004 by another immigration judge. And the cross-examination was continued with another, with the deciding immigration judge in 2008. So in 2004, the immigration judge at the end of that hearing did not explain to the petitioner the need for any corroborating evidence And it was only in 2008, like Ed mentioned, that the petitioner was first put on notice that the judge would require corroborating testimony from the family members. If I could, I'd like to change just a little bit. The BIA's decision is really what I left to look at here. And it seems to me that the BIA did not address the timeliness issue that the IJ reviewed in denying asylum. In fact, they made their total determination on a credibility determination. And yet the IJ did not really address the credibility determination as it related to the asylum claim. So is there any case law for me to address then the asylum claim on a credibility determination since the IJ didn't? I don't think so, Your Honor. I would imagine that if the IJ basically stated that because they found adverse credibility that... Withholding and Kat are determinative on adverse credibility. Right, that it wouldn't have to address the one-year issue. That's what the BIA said. Right. But what the IJ said was that after everything's said and done, this has all to do with timeliness as to asylum. Well, there's a... Well, the BIA did not address that issue, so I cannot present that issue to you. The IJ had alternative basis for denying relief, both adverse credibility just on the merits, and as a result of that, it raised the time bar as well, but that was totally separate. Right. That's what I was trying to make sure you were with me or against me on. Right. Did the IJ use alternative, or did the IJ only base his asylum determination on the one-year timeliness? It's hard to know that, Your Honor, because the IJ says there was a discrepancy as to whether he had returned to Armenia. I think that was one of the... The IJ goes through a whole series of inconsistencies that had nothing to do with when he last came back into the country. Right. You're saying that the record, the IJ's decision is ambiguous as to whether there were these alternative grounds for denying relief? No, Your Honor. I mean, the IJ denied based on adverse credibility alone, and then also one of the adverse credibility decisions had to do with... It affected the timeliness. It affected the timeliness. But the timeliness bar was a totally separate bar from the adverse credibility determination that went to the merits. I agree with you. Okay. Yeah. Okay. Very good. And the next thing that I look at is when I look at the BIA's decision, it says the testimony was vague and contradictory, and then only really deals with change the testimony about the name of the political party once confronted. Is that the only issue that I can deal with on appeal, then, is the changing of the name of the political party once confronted? Well, Your Honor, there's the testimony... I mean, you're representing the petitioner, so I'm trying to determine if I can look about... date of arrival. There's all kinds of issues there, but given what the BIA said, can I look at those other issues? I believe you'd be only limited to looking at whatever the BIA decided. So I can only look at change testimony about the name of the political party once confronted? I believe so. I think that would be the only... I think this Court would only have review over the BIA and the issues the BIA brought up. I believe if the BIA implied some other inconsistencies, I think you might be able to consider them. Well, I have the exact same question that Judge Smith does, and what I guess I'm stuck on is the four examples. So do you have case law that addresses when the BIA says the four examples? Because that suggests to me that it's not limiting itself just to the one inconsistency it identifies expressly, but rather saying we're adopting the IJ's decision, but we're not going to go through every one. Here's one example. I don't have any specific case law that I can refer the Court to, but, again, if the brief that we submitted to the Court deals with more of the adverse credibility decisions that the IJ made that were beyond what the BIA determined, and we've got adequate explanations for all, but I think... Help me out on this, though. I mean, our case law is crystal clear that if the IJ gives five reasons for finding someone not credible and the BIA only expressly adopts one of them, we're limited to reviewing just that one. That's correct. And I'm just having a hard time superimposing that body of case law into this case, because here the BIA just made this suggestive four-example statement. But you're saying we don't have any case law that deals with that? Well, I don't have any case law offhand that I could refer the Court to, but I would imagine that we'd have to stay consistent with the case law that whatever examples that the BIA were to state in their decision would be the only examples of inconsistencies that the nyserkin could deal with. Well, for instance, Techl at 533 Fed Third says, a panel cannot review those parts of the IJ adverse credibility finding that the BIA did not identify as most significant and did not otherwise mention. So I'm just trying to apply that to this BIA decision. Well, then it would be my opinion that the Ninth Circuit would only be limited to addressing those particular instances of adverse credibility. Otherwise, the Ninth Circuit would have to go fishing for what the BIA meant by four-example. And I'd like to reserve the rest of my time for rebuttal. Okay. May it please the Court, Sharon Pike for the Attorney General. In listening to your questioning, I apologize that I do not have a case that suggests or provides you with the answer. But the government's position would be that each of the adverse credibility findings that the immigration judge did present is properly before this court. The board, in reaching its decision, actually affirmed the immigration judge's adverse credibility finding. In so holding, what he did state is that the board, I mean, that the immigration judge did not err, and did not create a clear error when he found it, blah, blah, blah. Well, maybe can you point me to where in the BIA's decision do you, where could you point us to to suggest that the BIA was just adopting wholesale the IJ's decision? Because if the board was actually providing a de novo review on the case, they would have probably fleshed out more of the issues. They wouldn't have just given you the example. They were comfortable with the determination that the immigration judge had made, and just simply supplemented it with a part of it, with his own opinion. Well, but the folks who serve on the BIA, they know pretty well our rules. And our rule is that if the BIA simply adopts the IJ's decision, then, yeah, we have to go look at the IJ's decision, and every single ground the IJ states is properly before us. But they also know that when the IJ gives multiple reasons and the BIA only picks one or two of those, we're stuck with or limited to reviewing just the ones the BIA mentions. And so I don't quite understand why, I'm not sure how we're supposed to deal with this particular decision. Well, if the board, when the board actually adopts some of the determination from the IJ or all, it didn't do all because it didn't cite the matter of Bourbano. But what the court, what the board did do was not find that there was clear error in the immigration judge's decision. That infers that the immigration judge's determination on adverse credibility was well-founded, in which case it would incorporate the immigration judge's decision within the board's finding. That would be your position? Yes. Okay. Do you have any other questions in terms of adverse credibility? Well, as to the name of the party, after reading the transcript, I'm not sure that the petitioner changed testimony after being confronted with the document saying he was a member of the Ardarchua, I don't say that very well, Justice Party. Instead, it seemed to me the testimony remained the same. The only real conflict I found was between national and people, which the translator said he made a mistake in the translation. So even if that's a contradiction, why is it significant? Party affiliation is significant because it provides the basis for his fear of returning to Armenia. The reason why, that's just assuming that the testimony was consistent and it was credible, despite petitioner's contention that the name of the organization would not change, although he provided all these different explanations for different changes to the name. The reality is that his claim and his membership or participation in HZHCH is only present in his testimony. That was not the membership or organization that he belonged to based on his asylum application. If you look at his declaration... Where was he confronted with that? He was confronted several times when he was presented a document that he submitted to the court stating that he was part of the Justice Party. And like you said, it was resolved. They did find out that the transcriber... I'll be fair. My worry is that I didn't find a confrontation about HZHCH not being the same party based on the initials. Well, he gave testimony stating that. What party were you affiliated with? He stated that he was affiliated with the HZHCH. When he asked whether or not it came by it had any other name, he could have presented some other kind of explanation for the alternate name for the party, but what he did do is decline his membership with the HZHK party, in which case his entire claim initially was based on his membership in that organization. Well, when I go to the newspaper article, he denied he was ever a member of HZHK and said it was a typographical error. Why is that not reasonable? I mean, I have typographical errors in the newspapers around here all the time. Now, I'm not from Los Angeles, and I'm giving you the Idaho version, but the Idaho State Journal, we call it the Idaho State Journal. It just doesn't make it. I mean, I'm just trying to figure out why that wasn't a logical explanation. Because in his declaration, the only membership he had was with the HZHK. There was no affiliation with them. But why couldn't there just be a typographical error, as he suggested? Throughout the entire declaration? I mean, it's stated in the declaration probably three or four times that he was a member, and he actually testified that he was not a member. Well, I understand, but I'm just saying it's the newspaper article when they were confronted. So I'm trying to go through. If they're working with confrontations, one might have been the newspaper article. The newspaper article is the one that said it isn't HZHCH, but HZHK, and he said that's a typographical error, and that seemed reasonable to me. That's true, but to some degree, the news article is not reliable in this particular case, because it's based on hearsay. Well, I understand that's why I'm not sure there was a confrontation. That's true. He actually listed in his declaration, this is the group that I belong to, HZHK. It was stated several times that that was the group he was part of, and he said he did not belong to any other group. When he appeared for testimony, he actually changed the name of the group, and although his testimony was consistent throughout, it's contradictory to his declaration. Let me ask you a question which is off the record, and it's kind of off in another space, but you're the representative of the government, so I'm going to ask it. Okay. It's my understanding that his wife and children came to the United States in November 2005. That is his testimony. My understanding they're now lawful permanent residents of Granite Asylum. I attempted to find that information out. I contacted a local ICE agent here in California, and the petitioner did not put his wife's alien number in the record when he placed her name in the asylum application, so I had to do a name search, and the gentleman that I spoke to said he didn't get a hit for her name in their database. Well, the reason I bring that up, it seems to me that the petitioner could get status through his wife. It appeared to me, too. And I wondered what steps may have already been taken to do that. Perhaps petitioner's counsel could tell you that. Now, the reason I ask these questions, is mediation a possibility in this case because of that? I wasn't presented with the opportunity to do that, but usually it's not, only because it's an adverse credibility case. We've been advised in our office that adverse claims tend to not be the ones that they offer prosecutor discretion in. But if the adverse credibility were something you kind of heard from the judges they're not necessarily with you on, and you kind of thought about this status of the wife and what we have here, that's why I'm asking you. Would mediation be a possibility? Under the circumstances of this case, again, it's not our discretion in our office. One of the hurdles I see in this particular case is the contradictory evidence about like the DMV records. It's going to be kind of a high hurdle to convince. Contradictory about what, did you say? Well, he gave testimony about his departure. The significance about this whole case is whether or not he was present in Armenia for a certain period of time for him to develop this basis for his fear of returning to Armenia. And we're not quite sure that we can even talk about that given what the BIA said, right? Well, no, the date of entry is one of the inconsistencies. They really didn't say anything about the departure as the testimony they were really focusing on. Well, actually, they did. They said that his departure was vague. They went into a long recital about the BIA decision. It just gives the one for example, and it gives one example. That's it. I mean, it's not this one. Right. But normally under the, well, I don't have the case law. I probably have to submit it to the court. But in cases where the immigration, I mean, the board does not expressly adopt and affirm the immigration judge's decision, but they provide an acceptance of the immigration judge's determination. Those determinations are incorporated into the board's decision, even if the board doesn't directly address them. Again, I apologize, I don't have any case law that suggests that. Well, and I apologize to you, because I'm taking questions which are outside the record, but kind of dealing with this case. I have to. I mean, I'm trying to say, if he's got his wife here and his kids here, and they're all got asylum, seems to me near. And based on what I got here, and what the BIA did here, I'm just trying to give the government a good shot at trying to take this case off my calendar. I get it, too, but the petitioner had a good shot, and he could have brought his wife forward. She could have given testimony. She could have submitted an affidavit that described the incidents that occurred to her husband, and she hasn't done that. Do you agree with petitioner's counsel that the petitioner asked, basically asked for an opportunity to bring the wife in at the end of the merits hearing? That he asked. He said he could bring her in if the court required it, or whatever that is. But essentially, it's the petitioner's burden to establish his eligibility for his relief. He was told that his absence from the country was going to be germane to his claim, and his harm that he suffered was going to be justified. In which case, his wife was the only person who could vouch or verify, has not come forward to vouch or verify for it. So it's really hard to say. I mean, and that kind of begs the question whether or not, I mean, if she wasn't willing to help here, am I going to go for a remand when I don't know she's willing to help him later? I'm not even sure that I'm asking a remand. I just said was a mediation available before we decided the case. I'm not asking for a remand of the government. I'm just saying we got a great mediation department here. We send a lot of cases to mediation, and this just seemed like it's not a criminal we got here. Correct. Well, I mean, aside from the death charge. I understand, but it's not the, what I see as real criminals you brought forward. In many situations, they are forced because of a criminal act. That's not the reason this one is enforced. Correct. Right. So I apologize that I kind of went outside the record and asked you some tough questions. That's okay. I'm glad I tried to figure out the answers to some of them. Thank you. Thank you. Why didn't he bring his wife forward? I don't have the answer to that question, Your Honor. I wasn't representing the petitioner at that time. I believe he submitted plenty of evidence to support his claim, all the other incidents as far as the accident that he suffered when he returned to Armenia. Well, he didn't have evidence. In this occasion, I don't want to confuse him, but did he get a ticket in California during the time that he said he was in Armenia? He had a traffic ticket while he was here, but it was paid by his friend after he had returned to Armenia. I mean, the BIA didn't address that issue, but the IJ made an issue of that. I mean, we all know you can pay for a traffic ticket by picking up a phone. You can do it online these days. I thought the testimony was that somebody made an appearance. They could have made an appearance to the clerk's office. So where was the friend? Obviously, he knew this was going to be a major issue because he was going to be time-barred if the IJ didn't believe his story that he got this friend to pay the ticket. So where was the friend? I don't have an answer for that, Your Honor. I know I read it, but I could not find it. I mean, I don't think government counsel was disputing it, but it was toward the end of the merits hearing, that's what you remember? It was towards the end of the merits hearing. Yeah, it was at the end of the cross. Do you know if the wife has done anything to help him? I don't know that. I would retain specifically to argue before the Ninth Circuit. Mr. Kazarian is the attorney of record. You didn't look at that and say to yourself, boy, this would be something we ought to look into because this would eliminate my job. Of course, it would eliminate your pay to be here. I'm just saying it seems to me like an easy way to go. Right. I know Mr. Kazarian is a very reputable immigration attorney, and he must have a reason for that not occurring. I don't know if there was any discussion as far as mediation is concerned. You can't give me some reason to do it, I guess. I don't know if any discussions were made between both parties, but if there is a time to have a quick discussion regarding mediation, we can go ahead and satisfy the court. Thank you for your argument. Case 10-70836. Gregorian v. Holder is submitted.
judges: Farris, Smith, Watford